## DAVIS & ROESCH TEMPERATURE CONTROLLING CO. v. TAGLIABUE et al.

(Circuit Court, E. D. New York. July 18, 1906.)

PATENTS—AGREEMENT TO ASSIGN FUTURE INVENTIONS—ENFORCEMENT IN EQUITY.

By contracts between defendant, an inventor, and two other persons, defendant assigned to each of such persons a one-third interest in inventions for which applications for patents were pending, and agreed to devote his best skill and energy to the making of improvements and further inventions in the same art, and to assign a like interest in all such inventions. Subsequently complainant corporation was organized by the three, to which the patents then issued were assigned, and defendant also assigned inventions covered by certain pending applications "and any and

148 F.—45

all inventions of like nature or similar thereto which I have already completed or which may hereafter be completed by me." Thereafter, while a stockholder in and an employé of complainant, he made other similar inventions which he assigned to complainant pursuant to such contracts, and also two similar inventions for which he subsequently obtained patents, which he assigned to his codefendant after leaving complainant's employ. *Held,* that complainant was entitled to a decree as against both defendants requiring the assignment to it of such patents; it being shown that the second defendant had knowledge of the terms of the contracts at the time he took the assignments.

In Equity.

James C. Chapin, for complainant.

Kenneson, Emley & Rubino, for defendants.

THOMAS, District Judge. Roesch was by occupation an inventor in the art involving air and fluid controlling and regulating devices. Davis was acquainted and occupied with the same art, and associated with Roesch in the employment of the Johnson Company, and Wadsworth was a member of the New York Stock Exchange, and able to furnish capital for the promotion of inventions. November 14, 1896, these three men, Roesch as the first party, Wadsworth as the second party, and Davis as the third party, entered into an agreement in writing, which recited, first, that Roesch had on the date named sold to Davis and Wadsworth, each, a one-third of "all his right and title and interest in and to the invention upon which he had heretofore made application for letters patent for improvements in automatic heat regulating devices [serial No. 600,317, filed July 23, 1896], and for improvements in thermostats [serial No. 609,935, filed October 24, 1896]"; second, that "all the parties hereto have entered into an agreement by which the said parties of the first and third parts (Roesch and Davis) are to devote their skill, kowledge and ability to the development and mechanical improvement and further invention of the said devices and all other new and kindred inventions, which may be discovered by them in the development of the same general line of mechanics"; third, that Wadsworth, "said party of the second part, has agreed to advance to them [Roesch and Davis] a limited sum of money, to assist them in and about the said matters and to pay the expenses of taking out letters patent for said inventions and others that may be hereafter applied for by the said parties of the first and third parts" (Roesch and Davis). And thereupon the parties stipulated,

"First. That said parties of the first and third parts hereby covenant and agree that they will devote their best skill and energy during the time that may be at their disposal in connection with the performance of their other duties, to the improvement, development and betterment of the said inventions hereinbefore particularly described and that they will further use their best endeavors to make other and further discoveries and inventions in and about the said general business, upon which they have now entered in their own interest and the interest of the said party of the second part, and that they will divulge and disclose to the said party of the second part and to each other all their said discoveries, inventions and mechanical ideas which may occur to them as often as may be required by either of the parties hereto and that they will make, execute and deliver to each other and to said party of the second part any and all papers, writings, transfers, assignments and agreements

which may be necessary or proper to invest each other and said party of the second part each with one-third of the title to any of the said inventions, discoveries, improvements, devices or mechanical ideas herein before referred to.

"Second. And said party of the second part hereby agrees that he will pay and advance from time to time, as may be necessary for the benefit and advantage of the said efforts to be faithfully made by said parties of the first and third parts and for the development thereof and for the procuring of letters patent for any inventions that have now been or may hereafter be made by said parties of the first and third parts or either of them severally, such sums as may be required to the extent of not more than five hundred dollars.

"Third. That said parties hereto further mutually agree with each other that at such time as may seem prudent, they will each and all severally sell, assign, transfer and set over unto any corporation, joint stock company or other combination as that may be devised for the benefit and development of the said business, each and all their interest in each and all said inventions or in any patents to be granted therefor.

"Fourth. This agreement is understood to extend to and include in and be binding upon all the heirs, executors, administrators and assigns of the several parties hereto."

About May 1, 1897, Roesch left the employ of the Johnson Company, and on May 7, 1897, Roesch wrote Davis as follows:

"Our agreements are as good as gold. No one can take them away from us. The only thing about them is that each of us can sell our interest, and each of us can manufacture separately without any of the other two getting profits from the business. If W. B. W. and yourself want me to go ahead as agreed, I will take out all the other patents, while I am here now. The agreements are just as good as if they were dated after the granting of the patents. * * * I will sign any agreement that will bind the three of us. * * * Davis, that agreement of yours is worth $10,000 to you easily, because it includes all my inventions as long as I live in that line. * * * You will have to leave and go right up to Bridgeport with me, and it won't take long to get started. * * * I will go right ahead with the patents. All you have to say is, 'Go ahead.' "

On May 10, 1897, the three parties entered into the agreement marked "Partnership Restriction Agreement," which is as follows:

"Memorandum of agreement by and between Alfred Roesch, party of the first part, William Wadsworth, party of the second part, and Frederick H. Davis, party of the third part, witnesseth:

"That whereas the said party of the first part has heretofore and on or about the 14th day of November, 1896, sold, assigned and transferred unto the said parties of the second and third parts and to each of them severally one-third ($\frac{1}{3}$) of all his right, title and interest in and to certain inventions upon which he, said party of the first part, had theretofore made application for letters patent of the United States for improvements in automatic heat regulating devices (serial No. 600,317, filed July 23, 1896), and for improvements in thermostats (serial No. 609,935, filed October 24, 1896). And whereas by said assignment the said parties hereto own and control each one-third ($\frac{1}{3}$) of the full and exclusive right to the said inventions assigned as aforesaid, and it is agreed between them that it is desirable that the entire right and interest in the said inventions and the right to manufacture and sell thereunder, shall be kept together and maintained as a whole.

"Now, therefore, this agreement witnesseth, that the said parties hereto in consideration of the premises and the mutual covenants and agreements herein contained, and of the sum of one dollar ($1.00) by each to the other in hand paid, the receipt whereof is hereby acknowledged, it is mutually agreed as follows: That for the term of seventeen years from and after the date of these presents neither of the said parties shall sell, assign or transfer his interest in the said invention or in the letters patent to be issued thereon nor any

part thereof nor in any improvements and further additions and inventions relating thereto, nor assign nor grant any right, privilege or interest in or under said inventions or said letters patent to any person, firm or corporation without first having obtained the written consent thereto of the other parties to this agreement."

After signing the restriction agreement, Roesch and Davis both went to Bridgeport to work on Roesch's improvements, under an arrangement with Wadsworth that each should be paid $5 a day, and Wadsworth advanced for tools and machinery, wages, etc., over $6,000 up to the formation of the company. Before the execution of the second contract Roesch had applied for a third patent, and shortly after going to Bridgeport, and on June 7, 1897, he made four new applications, so that at the date of the formation of the company there were pending in the Patent Office five applications. Two patents for inventions already assigned had issued to Roesch, Davis, and Wadsworth. On September 18, 1897, the three men incorporated the Davis & Roesch Temperature Controlling Company, the complainant. The certificate of incorporation provided for $45,000 of common stock and $5,000 of preferred stock, and that all of the preferred stock should be taken by Wadsworth, whereby he was enabled to choose a majority of the directors. On September 23 and 24, 1897, the directors of the company passed the following resolutions:

### Resolution of September 23.

"Whereas, Alfred Roesch, William B. Wadsworth and Frederick H. Davis have offered to transfer, or cause to be transferred, to this company certain inventions and patent rights, including the patent of United States of America numbered 583,632, automatic heat regulator, Alfred Roesch, of Brooklyn, N. Y., assignor of two-thirds to William B. Wadsworth, Plainfield, and Frederick H. Davis, Elizabeth, N. J.; filed July 23rd, 1896, serial No. 600,317; and also a certain patent No. 583,633, thermostat, Alfred Roesch, Brooklyn, N. Y., assignor of two-thirds to William B. Wadsworth, Plainfield, and Frederick H. Davis, Elizabeth, N. J.; filed October 24, 1896, serial No. 609,935, and also certain other applications for patents which have been filed in the office of the Patent Office of the United States, to which patents have not yet been issued, and also certain other property, all of which is more especially described in the proposed written conveyance thereof presented for the consideration of the stockholders this day (for full copy of conveyance see pages 73–76 of this minute book) and to cause a proper conveyance thereof to be executed and delivered to this company in consideration of the issue of stock to the amount of the value thereof in payment therefor, to wit, the sum of forty-five thousand dollars, and whereas, it appears to the stockholders of this company that such property is necessary for the business of this company and that the consideration named is the value of the property proposed to be purchased. Now, therefore, be it resolved, that the company do purchase the said property above mentioned for said price and that the directors and officers of this company be authorized and instructed to perfect the purchase of the said property, and to cause to be issued therefor in proper form, pursuant to the laws of the state of New Jersey, full paid stock of this company to the extent of forty-five thousand dollars, provided that in the judgment of the board of directors of this company the above is the value of the property to be purchased."

### Resolution of September 24.

"Whereas, by resolution duly passed at a meeting of the stockholders of this company, held on the 23rd day of September, 1897, the directors were authorized and instructed to purchase certain specified property (for description of this property see pages 73 to 76), and upon the transfer of the same to pay

for the said property the sum of forty-five thousand dollars in full paid common stock of this company provided in the judgment of the board of directors the said price was a fair valuation thereof; and whereas, in the judgment of the board of directors the said property is necessary for the business of the company, and that the value thereof is the amount at par of the stock proposed to be issued in payment therefor. Now, therefore, be it resolved, that in accordance with the provisions of the said resolution of the stockholders, this company do purchase the said property for the sum of forty-five thousand dollars to be paid for in the full paid stock of this company at par value; and the president and treasurer of this company are hereby authorized, empowered and directed, upon the execution and delivery of the said conveyance (the form of which is hereby approved), of the said property to issue and deliver in accordance with the said resolution the full paid common stock of this company to the amount of forty-five thousand dollars being four hundred and fifty shares of the par value of one hundred dollars each in payment therefor."

It is conceded that two assignments were made and delivered to the company, and constitute the matter to which reference is made for description on page "73 to 76" of the minutes of the directors.

The assignments were as follows:

### Joint Assignment to Company, Dated October 11, 1897.

"Whereas, letters patent of the United States Number 583,632 for an automatic heat regulator and letters patent Number 583,633 for a thermostat were issued on the first day of June, 1897, to Alfred Roesch of the city of Brooklyn, county of Kings, and state of New York, William B. Wadsworth of Plainfield, Union county and state of New Jersey, and Frederick H. Davis of Elizabeth, Union county and state of New Jersey; and whereas, we, said Alfred Roesch, William B. Wadsworth and Frederick H. Davis, are the sole owners of said letters patent and of all the rights under the same; and whereas, the Davis & Roesch Temperature Controlling Company, a corporation organized under and pursuant to the laws of the state of New Jersey, is desirous of acquiring the entire interest in the same:

"Now, therefore, to all it may concern be it known that for and in consideration of the sum of one dollar to each of us in hand paid, the receipt of which is by each of us hereby acknowledged, we the said Alfred Roesch, William B. Wadsworth, and Frederick H. Davis have sold, assigned, and transferred and by these presents do sell, assign and transfer unto the said Davis & Roesch Temperature Controlling Company, its successors or assigns, our whole right, title and interest in and to said letters patent No. 583,632 and 583,633 and the inventions therein contained together with all rights or causes of action which may have heretofore accrued to us through any infringement by others of said letters patent; the same to be held and enjoyed by the said Davis & Roesch Temperature Controlling Company for its own use and behoof and the use and behoof of its legal representatives to the full end of the term for which said letters patent are or may be granted as fully and entirely as the same would have been held and enjoyed by us had this assignment and sale not been made."

### Sole Assignment Made by Roesch to Complainant, Dated October 11, 1897, and Recorded in the Patent Office October 12, 1897.

"Whereas, I, Alfred Roesch, of the city of Brooklyn, county of Kings and state of New York, have invented certain new and useful improvements in air and fluid controlling and regulating devices, and have filed applications for United States letters patent therefor, which applications were filed and numbered as follows:

"Serial No. 618,160, filed January 6, 1897, for air controlling devices.

"Serial No. 639,757, filed June 7, 1897, for automatic temperature regulator for water heaters.

"Serial No. 639,758, filed June 7, 1897, for automatic temperature regulator.

"Serial No. 639,759, filed June 7, 1897, for air controlling mechanism.

"Serial No. 639,760, filed June 7, 1897, for device for actuating fluid controlling valves by fluid pressure; and

"Whereas, the Davis & Roesch Temperature Controlling Company, a corporation organized under and pursuant to the laws of New Jersey are desirous of acquiring the entire interest in said invention and the letters patent to be obtained therefor:

"Now, therefore, to all whom it may concern be it known, that for and in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, I, the said Alfred Roesch, have sold, assigned and transferred, and by these presents do sell, assign and transfer unto the said Davis & Roesch Temperature Controlling Company the full and exclusive right to the said inventions as fully set forth and described in said various applications filed and numbered as aforesaid, and any and all inventions of like nature or similar thereto which I have already completed, or which may hereafter be completed by me. I do hereby authorize and request the Commissioner of Patents to issue the letters patent granted upon the foregoing applications to the said Davis & Roesch Temperature Controlling Company as assignee of my entire right, title and interest in and to the same and the inventions therein contained, for the sole use and behoof of the said Davis & Roesch Temperature Controlling Company and its legal representatives."

It will be observed that the joint assignment specifies the two patents definitely mentioned in the first and second agreements made by the three men, while Roesch's assignment specifically mentions the serial number of five applications and upon which four patents were afterwards issued, Nos. 595,654, 616,141, 616,142, 662,092. Thereafter Roesch continued to make inventions that were improvements upon the devices covered by the assignment, and assigned 19 thereof to the complainant; and to compel the defendant to assign two other similar inventions the bill is filed. Tagliabue is joined as a defendant, as he holds assignments of such two inventions dated severally July 7 and 25, 1903.

Roesch contends that he did not assign the 19 inventions pursuant to the stipulation contained in the assignment of October 11, 1897, but that such assignments were pursuant to a new agreement, whereby Roesch was to have royalties on the devices covered by such 19 patents. Although Roesch, after the formation of the company, exhibited dissatisfaction with his relations to the complainant and proposed a readjustment of such relations, and although Wadsworth proffered a written plan for a change of such relation, nothing resulted. And it is considered that Roesch did assign the 19 patents pursuant to the October, 1897, agreement. The two patents that he did not assign are of a like nature or similar to those covered by his sole assignment, and as between him and the complainant they belong to the latter if they are covered by the terms of the assignment. The language specifies certain inventions, "and any and all inventions of like nature or similar thereto which I have already completed, or which may hereafter be completed by me." Roesch seems to have regarded the assignment as covering future similar inventions by his transfer of inventions through the several following years. In his letter of November 30, 1897, to Wadsworth he says:

"Now, as to future inventions I wish to say this: I have agreed to assign them to the D. & R. Co., and I propose to live up to it. Of course, there were no conditions mentioned in the agreement. What I want to come to is this, what interest am I to have in these inventions?"

He then points out the hardships and possible vicissitudes of his existing relations to this company, and makes a suggestion for his benefit and protection.    That he was dissatisfied with what was secured to him is apparent, as is the fact that Wadsworth proposed a new arrangement.    But the proposal by Wadsworth or Roesch for a different or fairer allotment of interest does not change the legal status of the parties.    The first agreement between the men covered the two patents in controversy, and the corporation was the outgrowth of that agreement, and was created pursuant thereto.    The three assigned to the company whatever was in esse when the contract was made, and Roesch with the necessarily implied assent of Wadsworth and Davis assigned by the sole assignment to the company whatever had come into existence up to that time, and whatever Roesch should thereafter complete along the same line.    It is considered that the agreement and declarations of Roesch, and the conduct of the parties after the sole assignment, illustrate that the intention was to vest future similar inventions in the complainant, and that Roesch should by the decree of this court be directed to execute proper assignments of the two patents.

The next question is whether Tagliabue is affected by the assignment or notice thereof.    Tagliabue has made thermometers and kindred instruments at 53 Fulton street, New York, for over 30 years.    He bought goods of the complainant in the usual way from July, 1899, to 1901. Then relations became more intimate, and Wadsworth suggested the combination of the complainant's business and that of Tagliabue, but it was not done.    But in July, 1901, Tagliabue and the complainant made a contract for the sale by the former of the latter's devices, and Davis was at that date engaged by Tagliabue as a salesman, and that relation continued until December 31, 1902.    In 1901 Roesch had a conversation with Tagliabue about entering his service, and defendants charge that Davis urged such an arrangement and that Wadsworth prevented it, and that Davis had repeatedly stated to Tagliabue and to his superintendent that Roesch had no contract with the complainant that would prevent Roesch entering Tagliabue's employ and devising temperature regulators that would not infringe Roesch's inventions under which complainant was manufacturing.    On December 31, 1902, Davis left Tagliabue's service and devoted himself entirely to the complainant's business, and Roesch took charge of complainant's factory in Jersey City, where he continued to April, 1903, when he went to Chicago upon complainant's business, but converted his trip into a debauch, to which he was subject, and upon Wadsworth refusing to send him money Roesch's service with the complainant ceased.    While Roesch was so absent and in April, 1903, Davis met Tagliabue at the Astor House, and, as he testifies, explained to him the nature of Roesch's obligation to the complainant, and described the rights of the complainant to such inventions as Roesch might make in the manner now claimed by the complainant.    Tagliabue denies that such information was imparted to him, and the evidence of other witnesses is involved upon the question of such specific notice.    On May 14, 1903, Roesch entered Tagliabue's employ to devise temperature controlling devices, which devices defendants state should not infringe existing

patents. On July 8, 1903, Wadsworth in his individual capacity wrote to Roesch, relating to the purchase if the latter stayed in the complainant's employ:

"As you know, I have already over $30,000 in the company. I am not very anxious to put more in, and especially as I see you are getting out a new hot water regulator that is going to eclipse ours. Whether this is true or not you know better than I. If it is true and you have a better regulator, I do not think the Davis and Roesch stock would be worth much of anything."

It was about September, 1903, that the complainant made a formal statement of its present claim to Tagliabue and Roesch, and the present bill was filed September 28, 1903. In October, 1904, Hohmann, who had been for several years in Tagliabue's employ, left it for service with Taylor Bros., who had the selling agency of complainant's goods. This is noticeable as his evidence relates to the question of actual notice to Tagliabue of the scope of complainant's rights.

Reference has been made to the proposed consolidation of complainant's and Tagliabue's business in 1901. At that time complainant contends that the partnership agreement of November 14, 1896, the restriction agreement of May 10, 1897 (called herein "second" agreement), and the assignments of October 11, 1897, were submitted to Tagliabue. The evidence is conflicting, but it is probable that these papers were submitted to Tagliabue. Complainant's evidence of specific acts and conversations furnishes an affirmative history that is more persuasive than the negation of Tagliabue and Roesch. As Tagliabue saw these documents, as he had been and continued in such familiar business relations to the complainant's company, buying and selling complainant's goods made pursuant to Roesch's patents, and had conversation with Davis about Roesch's relation to the complainant, although he denies notice of ownership of future inventions, it is concluded that he had notice of the complainant's interest to such an extent that he must be declared to have known that the two patents in question were invented while Roesch was still in the complainant's employment, and presumably belonged to it. Hence they do not fall under Tagliabue's contract with Roesch, and are identified as inventions that Roesch brought into being for the very purpose of becoming the property of the complainant. Roesch entered Tagliabue's service May 14, 1903. By July 7th he had assigned one patent to Tagliabue; by July 27th he had assigned another. It is difficult to believe otherwise than that Tagliabue knew that he was taking assignments of patents not invented in his service. If it can be contended successfully that the assignment could not carry the products of Roesch's mind that he conceived and executed in Tagliabue's employment, which employment was undertaken and continued at Tagliabue's expense for the very purpose of stimulating and effecting such inventions, yet as regards the two patents the result was essentially reached, while Roesch was practically fulfilling the contract between him and the complainant with the facilities and appointments that such employment offers.

It is decided that the complainant is entitled to a decree directing the defendants to assign to complainant the two patents in controversy.